UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DEBORAH R. PERZ,<br>        Plaintiff, | )<br>)<br>) |
| v. | )   CAUSE NO.: 2:20-CV-367-JPK |
| KILOLO KIJAKAZI, Acting Commissioner of<br>Social Security,<br>        Defendant. | )<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed on October 13, 2020, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 20], filed on August 9, 2021. Plaintiff requests that the January 3, 2020 decision of the Administrative Law Judge (ALJ) denying her claim for supplemental security income benefits be reversed and remanded for a new hearing. For the following reasons, the Court grants Plaintiff's request.

## PROCEDURAL BACKGROUND

On May 11, 2015, Plaintiff filed her application for supplemental security income benefits, alleging disability beginning July 15, 2014. Plaintiff's application was denied initially and on reconsideration. (AR 198-201, 207-09).[1] After an initial hearing on January 8, 2018, an ALJ denied benefits, but the Appeals Council remanded for a supplemental hearing. (AR 178-88, 196-97). After a second hearing on December 10, 2019, a second ALJ issued an unfavorable decision on January 3, 2020, making the following findings:[2]

---

[1] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

[2] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

1. The claimant has not engaged in substantial gainful activity since May 11, 2015, the application date.

2. The claimant has the following severe impairments: obesity; lumbar spine degenerative disc disease; left shoulder osteoarthritis, status post arthroscopic surgery with repair of the rotator cuff; and bilateral carpal tunnel syndrome, status post release.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), including sit 6-8 hours out of an 8-hour workday, stand/walk at least 6 hours, and lift/carry 20 pounds occasionally and 10 pounds frequently, except: occasionally stoop, crawl, climb, crouch and kneel; occasionally reach overhead with the non-dominant left upper extremity; and frequent bilateral grasping.

5. The claimant is capable of performing her past relevant work as a housekeeper/cleaner. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

6. The claimant has not been under a disability, as defined in the Social Security Act, since May 11, 2015, the date the application was filed.

(AR 20-36).

Plaintiff appealed, but the Appeals Council denied review. (AR 1-5). Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by

substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable

impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether she is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff argues that the ALJ improperly relied on outdated medical opinions in crafting the RFC and failed to properly assess her subjective symptoms. Pl.'s Br. 8-17 [DE 20]. For the reasons described below, the Court finds that the ALJ's reliance on opinions from consultative examiners who were only able to review evidence relating to one of Plaintiff's "severe impairments" requires remand.

### I.     Opinions of Jerry Smartt and Shayne Small

In this case, the ALJ found that Plaintiff had four severe impairments, all physical in nature: obesity, degenerative disc disease; left shoulder osteoarthritis, status post arthroscopic surgery with repair of the rotator cuff; and carpal tunnel syndrome. (*See* AR 23). The only medical opinions

directed to physical impairments were those of consultative examiners Jerry Smartt, issued July 18, 2015 (AR 152-156), and Shayne Small, issued September 9, 2015 (AR 166-169).[3] Both consultants reviewed medical evidence pertaining to Plaintiff's left shoulder injuries and concluded that Plaintiff was capable of light work[4] with some limitations. (AR 155-156, 168-169). However, neither consultant reviewed or considered records of Plaintiff's obesity, degenerative disc disease, or carpal tunnel syndrome. Most of the records pertaining to these impairments were generated in 2016 and later, after the doctors issued their opinions (*see* AR 28, 30-32). As Plaintiff describes it, "863 pages, or more than eighty-nine percent of the medical record[,] was unavailable to them." Pl.'s Br. 9 [DE 20]. The ALJ acknowledged the limited record available to the consultants in 2015, but adopted their opinions in part:

> The undersigned is persuaded by the DDS consultants in regards to restricting the claimant to the light exertional level which is consistent and supported by the longitudinal record. However, the undersigned does not give the DDS consultants great weight because they did not have the opportunity to review evidence received subsequently that shows despite the continued complaints of some physical issues and pain, the claimant's impairments have also improved specifically her left shoulder and wrists. Therefore, the undersigned is not persuaded by the additional reaching restrictions laterally and in front. Likewise, to adequately account for the combination of the claimant's physical impairments, the undersigned has included more postural restrictions than the DDS consultants did.

(AR 33).

The ALJ herself discussed much of the evidence that was unavailable to the consultants. In brief, she concluded that Plaintiff's back and shoulder pain had either improved with treatment

---

[3] The examiners' reports indicate that other doctors were involved in the consultation. (*See* AR 153-54, (report signed by Donna Universaw, Ph.D.); AR 167 (William H. Shipley, Ph.D.)). It appears that those doctors were consulted regarding Plaintiff's mental impairments. Although the ALJ referred generally to the examiners as "the DDS consultants," and mentioned no one by name (AR 33), Plaintiff attributed the opinions to Drs. Smartt and Small, and the Commissioner did not object to that characterization. Regardless, any ambiguity as to which doctor offered the opinion is irrelevant to the basis for remand.

[4] Specifically, both opined that Plaintiff could "occasionally" lift 20 pounds, "frequently" lift 10 pounds, and sit, stand, or walk for at least six hours of an eight-hour workday, which are the main components of "light work" as defined in the applicable regulations. *See* 20 C.F.R. § 404.1567(b).

5

or were not as bad as Plaintiff alleged; that she had not followed treatment recommendations for her obesity; and that surgery had largely resolved the symptoms arising from her carpal tunnel syndrome. (AR 30-32). The ALJ agreed with the consultants that Plaintiff could perform light work, but provided postural and exertional limitations that were somewhat different from the consultants' recommendations. (*See* AR 27, 33).

Plaintiff argues that the ALJ was wrong to rely on these older medical opinions. Generally, an ALJ must seek an expert's opinion to interpret new and "potentially decisive" medical evidence. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). The Commissioner argues that the ALJ herself adequately analyzed the medical record and provided substantial evidence for the limitations in the RFC. The mere existence of extra medical records, even in large numbers, does not necessarily require expert opinion; "[i]f an ALJ were required to update the record any time a claimant continued to receive treatment, a case might never end." *Keys v. Berryhill*, 679 F. App'x 477, 481 (7th Cir. 2017). The question is whether "the new information 'changed the picture so much that the ALJ erred by . . . evaluating himself the significance of [the subsequent] report[s],' or whether the updated information was minor enough that the ALJ did not need to seek a second opinion." *Kemplen v. Saul*, 844 F. App'x 883, 887 (7th Cir. 2021) (quoting *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016)).

In this case, the Court is persuaded that an updated opinion was needed. For example, the ALJ echoed the conclusions of the consulting doctors that Plaintiff was able to stand or walk for six hours out of an eight-hour workday. (*See* AR 27, 155, 168). But the doctors were not able to consider evidence indicating that Plaintiff had degenerative damage to her spine and left knee (AR 1366-67, 1379) and a body mass index of more than 40[5] (AR 1406). Although Plaintiff's

---

[5] A previous Social Security Ruling indicated that a BMI of more than 40 established "extreme" obesity, which was the highest level recognized by the agency. *See* SSR 02-1p, 2002 WL 34686281, at *2 (September 12, 2002); *see also*

application listed "back pain" as a potential reason for disability (*see* AR 150), the doctors' review appeared to focus entirely on records of her left shoulder injuries; it is not clear whether they even considered Plaintiff's obesity or reviewed records of any of her other impairments. (*See* AR 152-153, 156 (Dr. Smartt's opinion analyzing "L shoulder pain" with no reference to records of any other kind of injury); AR 166, 169 (Dr. Small's opinion "affirming" Dr. Smartt's finding)); *see also Goins*, 764 F.3d at 680 (remanding where consultative examiners were "vague about the medical evidence that they thought supported their conclusions").

The ALJ found Plaintiff's obesity and degenerative disc disease to be severe impairments, meaning that they would have affected her ability to do work-related activities. The related records appear to be "potentially decisive" information; the examiners may have reached a different conclusion about Plaintiff's ability to stand or walk for long periods if they knew the extent of her obesity and back problems. The fact that several years have passed since the original consultations, although not conclusive, also weighs in favor of a new medical opinion. *See Moreno v. Berryhill*, 882 F.3d 722, 729 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018) (remanding for a new medical opinion in "a case that had trekked through a seven-year-long journey, which rendered important aspects of the early [. . .] analysis stale").

The Commissioner argues that the ALJ's discussion of the record adequately explained her conclusions regarding the portions of the record not reviewed by a medical expert.[6] As explained

---

*Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011). That ruling has since been rescinded, and the new rule defines obesity only as "a BMI of 30.0 or higher." SSR 19-2p, 2019 WL 2374244, at *2 (May 20, 2019).

[6] The Commissioner cites *Poyck v. Astrue*, 414 F. App'x 859 (7th Cir. 2011), for the premise that ALJs enjoy some deference in deciding how much to develop the record, including when to order a follow-up consultative examination. Resp. Br. 13 [DE 21]. But in that case, the claimant "did not assert . . . that any of his conditions had worsened since his last medical exam, nor did he identify any new conditions or impairments." 414 F. App'x at 862. This case presents a different set of circumstances, since the record here documented three "severe impairments" the consultants apparently did not consider.

7

above, if that discussion showed why the new evidence was not "potentially decisive," the ALJ's decision could stand. But that did not happen here. The discussion of Plaintiff's obesity, in particular, sheds little light on why Plaintiff's standing or walking was not limited even further. The ALJ discussed several medical notes relating to obesity, noting that Plaintiff's weight had "increased over time," but the discussion was almost entirely devoted to listing treatment and lifestyle recommendations that Plaintiff failed to follow. (*See* AR 31). The ALJ concluded:

> The undersigned has accounted for the fact that the claimant's obesity and increased weight over the years has reasonably exacerbated the experience of her back and other impairments. The claimant even made the connection that her back pain and weight were related but per her testimony, the claimant has not done much other than attempt to diet to control her weight without heeding the recommendations for physical therapy and exercise to lose weight and also improve pain and functioning. Nonetheless, the undersigned has accounted for obesity and the associated symptoms in the above residual functional capacity in both the exertional and non-exertional limitations.

(*Id.*)

As described above, in 2015 the consulting examiners found that Plaintiff could stand and walk for six hours of an eight-hour workday. The ALJ imposed that identical limitation in the January 2020 decision. Apparently, the ALJ concluded either that (1) the examiners adequately accounted for Plaintiff's current level of obesity in their older opinions, even though obesity was not expressly considered in either opinion (*see* AR 152-156, 166-169); or (2) Plaintiff's worsening obesity did not significantly affect her standing or walking, so there was no need to impose additional limitations for that in the RFC. No "logical bridge" to either conclusion is apparent from the record. Even discounting Plaintiff's objections about the ALJ's negative inferences from her obesity treatment, *see infra*, the ALJ's discussion does little to disturb the Court's conclusion that this evidence was potentially decisive regarding Plaintiff's ability to do light work. Because

medical conclusions about such evidence must be based on doctors' opinions, and not "the ALJ's own assessment," remand is required. *Moreno*, 882 F.3d 729; *Goins*, 764 F.3d at 680.

## II.     Treatment Plan

Although the case is remanded on other grounds, the Court also addresses two of Plaintiff's arguments regarding the ALJ's discussion of her treatment regime. If an ALJ concludes that a claimant's symptoms are not as bad as she claims, the ALJ must "evaluate whether [subjective complaints] are consistent with objective medical evidence and the other evidence," and "explain" which symptoms were found to be consistent or inconsistent with the evidence. SSR 16-3p, 2016 WL 1119029 at *6, *8; *see also Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (remanding where ALJ failed to "explain[] the inconsistencies" between a claimant's complaints of pain and the medical evidence). In particular, if negative inferences are to be drawn regarding a claimant's failure to seek treatment, or follow treatment recommendations, the ALJ must first "explore[] the claimant's explanations as to the lack of medical care." *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (emphasis added).

The ALJ made a series of inferences about Plaintiff's lack of treatment, or failure to pursue treatment, without the appropriate inquiry or explanation. For example, the ALJ apparently made a negative inference based on Plaintiff's failure to pursue physical therapy to address her obesity.[7] (*See* AR 31) ("[P]er her testimony, the claimant has not done much other than attempt to diet to control her weight without heeding the recommendations for physical therapy and exercise to lose weight and also improve pain and functioning. Nonetheless, the undersigned has accounted for

---

[7] The ALJ appeared to conclude that Plaintiff's failure to follow the treatment recommendations was itself a potential basis to impose fewer limitations in the RFC. (*See* AR 31 ("[T]he claimant has not done much [to control her weight] . . . Nonetheless, the undersigned has accounted for obesity.")). Although failure to pursue treatment can be evidence that a claimant's symptoms are not as bad as she alleges, a disabled claimant would not be denied benefits merely for failing to follow "lifestyle" recommendations. *See* SSR 18-3p, 2018 WL 4945641, at *3 (Oct. 2, 2018) ("Prescribed treatment does not include lifestyle modifications, such as dieting, exercise, or smoking cessation.").

obesity and the associated symptoms in the [RFC]."). At the hearing, when asked why she did not attend physical therapy, Plaintiff testified: "I didn't have the money to go there. So I exercised at home." (AR 62). The ALJ took a dim view of this explanation: "[S]he also testified that she went to movies and went to other places indicating that she had sufficient gas money to go to places that she enjoyed . . . [S]he did not determine that her earnings would be appropriately spent on gas money to get her to physical therapy visits, which all of her providers recommended would help her symptoms. This makes it appear that the claimant has not made a genuine attempt to alleviate her symptoms or that perhaps her symptoms were not especially problematic." (AR 28, 32). It appears the ALJ interpreted Plaintiff's statement that she "didn't have the money to go" to mean that she could not afford *transportation*, rather than the therapy itself.[8] The testimony was unclear, but the ALJ did not follow up, and there was further testimony indicating that Plaintiff did in fact have financial difficulties. (*See* AR 52-53) (Plaintiff had no "money coming in" except for public assistance received by her boyfriend). It was not enough for the ALJ to rely on a plausible interpretation of Plaintiff's actions based on ambiguous testimony; she had to "*explore[]* the claimant's explanations," to make sure the ALJ's own inference was warranted. *Craft*, 539 F.3d at 679 (emphasis added); *see also Brown v. Saul*, 799 F. App'x 915, 920 (7th Cir. 2020) (warning against "speculative" inferences regarding a claimant's failure to seek care); *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014), as amended (Aug. 20, 2014) (remanding where "[t]here may be a reasonable explanation behind Murphy's actions, such as she may not have been able to afford

---

[8] Although the ALJ paraphrases Plaintiff's testimony as indicating that "she does not have gas money to get to physical therapy" (AR 28), there was no testimony about gas money, only the general statement that Plaintiff "didn't have the money to go." (AR 62). The ALJ did not cite to any source in which Plaintiff claimed her difficulties with the cost of physical therapy were limited to getting a ride, and the Court's review has not revealed any such reference in the record.

10

the treatment . . . [and] the ALJ did not ask important questions to determine if Murphy's actions were justifiable").

A similar problem arises with the ALJ's assessment of Plaintiff's back treatments. The ALJ found that Plaintiff's complaints about her back were not fully consistent with the evidence, in part because she "has not engaged or followed through with referrals for the very most routine and conservative treatment modalities including outpatient physical therapy, recommended exercise/low impact walking, massage therapy, aqua therapy, acupuncture, or even used a TENS unit." (AR 32-33). The ALJ documented referrals for massage, physical therapy, and exercise (*see* AR 32-33 (citing AR 1410, 1499)), but the Court finds no evidence that Plaintiff was ever referred for aqua therapy or a TENS unit, nor did the ALJ point to any evidence that those treatments would have helped her. An ALJ can properly observe that treatment for an impairment was conservative, *see Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009), but the ALJ must not penalize the claimant for failing to pursue treatments without appropriate evidence that they would have helped her.[9] *See, e.g., Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) (ALJ impermissibly "played doctor" by making a negative inference about a diabetic claimant who did not take insulin). And given the (admittedly unclear) testimony suggesting Plaintiff may not have been able to afford physical therapy, any inference based on her failure to pursue those treatments should have been accompanied by an inquiry about whether she had the money to do so. *Murphy*, 759 F.3d at 816; *see also* Social Security Ruling 16-3p, 2016 WL 1119029 (Mar. 16, 2016), at *8-10. None of this is to say the ALJ could not make credibility determinations regarding Plaintiff's subjective

---

[9] The Commissioner argues that the ALJ "simply identified types of treatment that were absent from the record," as examples of what could have been prescribed if Plaintiff's back injuries were more serious. Resp. Br. 13 [DE 21]. To the extent intended for that purpose, the ALJ's remarks would be appropriate. However, this interpretation appears to contradict the plain language of the ALJ's decision. (*See* AR 33 (Plaintiff "*has not engaged or followed through with referrals* for the very most routine and conservative treatment modalities *including* [the treatments listed]") (emphasis added)).

symptoms if those findings were appropriately explained. Such credibility determinations are only subject to reversal when they are "patently wrong." *Wilder v. Kijakazi,* 22 F.4th 644, 653 (7th Cir. 2022) (quoting *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015) (quoting *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012))).

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 20] and **REMANDS** the decision of the Commissioner of the Social Security Administration. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff and against Defendant.

So ORDERED this 7th day of February, 2022.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT